### BENSON *v.* GERLACH.

(*Supreme Court, General Term, First Department.*   January 28, 1889.)

1. NEGOTIABLE INSTRUMENTS—ACTIONS—PRESUMPTION—POSSESSION OF NOTE.
   Plaintiff discounted a note for the payee on the information that the note was good, and in an action on it against the maker, the note was shown to be in plaintiff's possession.   There was also evidence that defendant had been informed of such disposition of the note.   *Held,* that a verdict should have been directed for plaintiff, though there was an understanding between the maker and payee that in a certain contingency the note would not be insisted upon, it not appearing that plaintiff had any notice of such agreement.

2. APPEAL—REVIEW—FAILURE TO EXCEPT.
   Error in refusing to direct such a verdict is available to the plaintiff although there was no exception to such refusal.

Appeal from circuit court, New York county.

Action by William Benson, as surviving partner, etc., against Charles A. Gerlach.   Judgment was given for defendant, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and MACOMBER, JJ.

*C. G. Patterson,* for appellant.   *Hamilton R. Squier,* for respondent.

MACOMBER, J.   At the close of the evidence each party requested the court to direct the jury to render a verdict in its favor, which was denied.   No exception was made to this ruling.   The action was upon a promissory note made on the 14th day of September, 1881, at the city of Buffalo, whereby the defendant promised to pay Simon B. Benson or order the sum of $1,633.34, in four months from the date thereof at the Bank of Commerce, in Buffalo.   At the

trial the plaintiffs appeared with this promissory note in their possession, and there arose consequently, in the absence of evidence, a presumption of law that they received it for value, before maturity, and without notice of any defense thereto.

The question in the case is whether there was any evidence whatever given in behalf of the defendant which would raise a question of fact by which the jury would be justified in rendering a verdict against these presumptions of law. It should be stated, however, in addition to the presumption made by the common-law rule under the law-merchant, that it was proved upon the trial that S. B. Benson, the payee of the note, sent it to his brother for discount, accompanied by a letter to the effect that the note was good; whereupon the plaintiffs discounted the note at the usual rate, and placed the proceeds to the credit of S. B. Benson in his account in their bank. The money so deposited to the credit of S. B. Benson was subsequently entirely drawn out by him. There was not any sufficient evidence in the case to justify the court in submitting to the jury any question which would enable them to render a verdict contrary to this statement. It is true that there was evidence given to the effect that the defendant Gerlach had made an arrangement with the payee by which, in a certain contingency, the note should not be insisted upon; but the case is entirely devoid of evidence to show that the plaintiffs or either of them had any knowledge or information of such agreement. Furthermore, the evidence is quite conclusive that when Phillips' and Briggs' notes were turned over to Herdic and Simon B. Benson upon their agreement to release the maker of the note in suit, in connection with other notes theretofore given, and return the same to him, (Gerlach,) the latter was in fact advised both by Herdic and Simon B. Benson at that time that this note had actually been used as a genuine and subsisting piece of commercial paper, and the reason assigned for so using it was that they were obliged to raise money upon it. Against the presumptions of law, and against the positive evidence and the strong circumstances of the case, there remained nothing but a bare suspicion that possibly there existed a private understanding, which could not be traced by evidence, between the payee of the note and these plaintiffs, and the jury was allowed to consider the evidence in regard to such suspicion, and to render such a verdict as such bare suspicion might enable them to do. This was legal error, and available to the appellant on the motion for a new trial, even though there was no exception to the refusal of the court to direct a verdict in his favor. The judgment and order should be reversed, and a new trial ordered, with costs to the appellant, to abide the event. All concur.