■ MANTY BENJAMIN, Appellant-Respondent, v KENNETH BENJAMIN et al., Respondents-Appellants, and MICHAEL L. ENTES, Respondent. — In an action, *inter alia,* to determine ownership of a winning New York State lottery ticket, (1) plaintiff Manty Benjamin appeals, and defendants Kenneth Benjamin, Theresa Mohammed, and the New York State Division of the Lottery (division) cross-appeal, from a judgment of the Supreme Court, Kings County (Schneier, J.), entered September 15, 1983, which, after a nonjury trial, *inter alia,* (a) dismissed plaintiff's cause of action to recover compensatory and punitive damages for conspiracy and to recover counsel fees, (b) adjudged that defendant Kenneth Benjamin was the owner of the winning lottery ticket, and (c) directed the division to amend its records to indicate that defendant Kenneth Benjamin was the winning ticket holder, and (2) plaintiff appeals from an order of the same court, dated August 23, 1983, which, in effect, denied plaintiff's motion to set aside stated portions of the verdict in the nonjury trial.

Appeal from the order dated August 23, 1983 dismissed, without costs or disbursements (see *Matter of Aho,* 39 NY2d 241, 248).

Judgment reversed, on the law and the facts, without costs or disbursements, it is declared that defendant Theresa Mohammed is the owner of the lottery ticket in question, and complaint otherwise dismissed.

On April 27, 1982 defendant Theresa Mohammed, plaintiff's sister, surrendered a New York State lottery ticket, which is a bearer instrument, to the New York State Division of the Lottery, and was declared the winner of a prize of over $1,500,000. The prize was to be distributed in installment payments over a 20-year period. When asked by the lottery officials to whom installment payments should be made in the event of her death, defendant Mohammed named her two children as beneficiaries. Immediately upon receiving a check payable to

her in the amount of approximately $66,000, representing the first year's installment of the prize, defendant Mohammed opened up a bank account in her name for approximately $33,000 and a bank account in the name of defendant Kenneth Benjamin for $33,000. On the day Mohammed surrendered the winning ticket, received the first installment and opened two bank accounts, she was accompanied by Kenneth Benjamin and her attorney, defendant Entes.

Defendant Benjamin is plaintiff's husband, but said parties had been separated for several years prior to the commencement of this action in October of 1982. Defendant Benjamin has been residing with his paramour, defendant Mohammed.

Plaintiff commenced this action, *inter alia,* to determine ownership of the winning lottery ticket. Plaintiff claimed that the winnings were marital property and defendants Benjamin, Mohammed and Estes had participated in a conspiracy to convey the winning lottery ticket from defendant Benjamin to defendant Mohammed with intent to defraud plaintiff of all possible claims to the winnings as a creditor of defendant Benjamin in a matrimonial action between plaintiff and defendant Benjamin.

As the possessor of the winning lottery ticket, which is a bearer instrument, defendant Mohammed is presumed to be the owner and the burden of rebutting this presumption is on plaintiff (Richardson, Evidence [Prince, 10th ed], § 75; 21 NY Jur, Evidence, § 131). In any case, defendants Mohammed, Benjamin and Entes testified at trial that Mohammed had purchased the winning ticket and presented half the proceeds of the first installment to defendant Benjamin as a gift.

According to the testimony of plaintiff and her landlady, and the testimony of three of plaintiff's and defendant Benjamin's four children, one evening in April of 1982, defendant Benjamin went to plaintiff's home and announced that he had won the lottery and that he and the children were millionaires. He further told plaintiff's landlady in the presence of plaintiff that he was going to put the prize in Mohammed's name so that plaintiff would not cheat him out of any money. The following day, defendant Benjamin drove his children by a liquor store and announced that this store was the place where he purchased the winning ticket.

At the trial, plaintiff's former attorney and his legal assistant appeared as plaintiff's witnesses and recounted a conversation they purportedly had with defendant Entes while waiting in Entes' office for their clients on an unrelated matter to appear. This conversation occurred on April 8, 1982, sometime prior to their coincidental meeting with plaintiff, which led to plaintiff's

subsequent retention of their services. According to these witnesses, defendant Entes told them a man who had won $1,500,000 came into his office with his girlfriend and had asked Entes to prepare an agreement which would insure his entitlement to at least some of the proceeds of a winning lottery ticket that he had given to his girlfriend to surrender to the lottery officials. Entes purportedly had charged them $500 for his services. No such agreement, however, was produced at trial. Furthermore, defendant Entes disputed plaintiff's witnesses' account of this conversation. Entes testified that he had informed plaintiff's former attorney and assistant that a client had won the lottery and had asked him to represent her because the lottery officials, due to the size of the prize, had advised his client to bring an attorney with her when she claimed it.

Mohammed's ownership of the lottery ticket could not be attacked by the out-of-court declarations allegedly made by defendant Benjamin and attorney Entes, outside Mohammed's presence, because said declarations are inadmissible hearsay as against codefendant Mohammed (*Lent v Shear,* 160 NY 462, 470; *Cuyler v McCartney,* 40 NY 221, 236; Richardson, Evidence [Prince, 10th ed], § 238). Defendant Benjamin's and defendant Entes' out-of-court declarations were not admissible against defendant Mohammed under the hearsay exception pertaining to admissions of a coconspirator because the independent proof was insufficient to establish a prima facie case of conspiracy and the declaration of an alleged conspirator cannot be admitted against an alleged coconspirator for the purpose of proving the conspiracy itself (*Lent v Shear, supra; Cuyler v McCartney, supra; Voisin v Commercial Mut. Ins. Co.,* 60 App Div 139; see, also, Richardson, Evidence [Prince, 10th ed], § 244; Fisch, NY Evidence [2d ed], § 802; Ann., Comment Note-Necessity and Sufficiency of Independent Evidence of Conspiracy to Allow Admission of Extrajudicial Statements of Coconspirators, 46 ALR3d 1148, §§ 2, 3, 29, 34, pars [a], [b]; cf. *Dewey v Moyer,* 72 NY 70, affd 103 US 301).

Since their extrajudicial declarations were inadmissible hearsay as against defendant Mohammed, there was insufficient evidence to rebut defendant Mohammed's testimony that she purchased the winning ticket and the presumption of ownership which arises from Mohammed's possession of said ticket. Accordingly, the trial court erred in finding that defendant Benjamin was the owner of the winning lottery ticket. Titone, J. P., Weinstein, Rubin and Boyers, JJ., concur.